Sporo 90843 in re the Marriage of Gina S. Diabate and Ali X. Diabate. How do you pronounce that name, Mr. Costello? Diabate, Your Honor. Diabate. Michael Costello for the appellant and for the appellee, Patrick James Smith. Please proceed. Thank you, Your Honor. May it please the Justices, this is really fairly a simple case, simple appeal. It's a matrimonial action. The parties were married on May 1st, 04, and they separated on May 4th, or in May of 07. They had two children. At the time of the trial, they were ages five and three, two girls. There's no issue as to custody. The wife was granted the custody of the children. The husband is a West African citizen, which is a former French colony and his first language is French, his second language is English. He operated a cleaning service and was attempting to do some work to build a very profitable enterprise. The mother of the children, the wife, her second marriage, is a civil engineer and was working for the state. The issue is whether or not Judge Nardulli abused his discretion in the apportionment of the property. In our brief is the breakdown of the award. Judge Nardulli, I believe, was mistaken in attributing too much debt to the assets of the parties. And the two major assets were two properties purchased at the instigation of the husband in Springfield for rental properties, which they worked on. They were mortgaged. She had a marital home, strike that, it was a non-marital home, she acquired that from a first divorce and that's where they lived. Judge Nardulli added up the assets on one side and determined and made allocations of these assets and determined that there was a minus $12,000 that was debt as compared to the assets. The husband came out with a plus of $9,000 for a Mercedes automobile, but Judge Nardulli then awarded the wife $10,000 to be payable in installments in order to equalize the distribution. Why are we here? We're claiming that the two properties that the judge balanced out with mortgage and with worth was incorrect. According to the wife's own testimony, which is at page, volume two, page 56 through 58, that one rental property, 703 North 14th Street, had an equity of about $30,000. Judge Nardulli found no equity. On the 3rd Street property in Springfield, the wife, after going round and round, admitted that there was an equity of $13,000. So the conclusion is that there was 39, approximately, we figured $39,000 worth of equity in the properties. Secondly, Now hadn't she tried to sell that one property for $59,000? Right, did not sell it. But of course the markets were depressed. But didn't Judge Nardulli assign the values that were in the appraisals? Even though she testified to a lower value, he actually assigned the higher value to the properties. He testified as to the appraisals which were obtained when they purchased the properties. The loans were, the appraisals were made, Your Justice, when the wife bricked, mortgaged the properties, claiming that she needed the money for rehabilitation. The court took an appraisal back in 2004, but she testified that they had an equity of $30,000 and $13,000. But what I'm trying to get from you, Mr. Costello, is he, let's talk about the 14th Street property. Judge Nardulli assigned a value of $75,000. Correct. And was that the property with the regent's mortgage of $46,000? Yes. So, and he set out that mortgage. So why isn't he showing equity in that? If you subtract $46,000 from $75,000, you've got around $30,000. So I think his figures are reflecting what you're saying. I think it's other debt that adds up to get you into the negative. Your Justice, you apparently are correct. Yes, I was just focusing on the equity, which was not, well, all right. Then we'll move to this point. If, in fact, there is equity of whatever it is, $39,000 to $43,000, did the wife brick those properties to cause indebtedness upon them? Now, we argue there was a fire at 14th Street. The husbands testified that there was $5,000 cost to repair that building. They were paid $47,000. The wife said she used that money to rehabilitate and repair the fire damage. We saw no records. It was only her testimony that I used that money, $47,000. Less five, there's $42,000 unaccounted for. When was the insurance payment made to her? Shortly after the fire, Your Honor. Do you know what year that was? December 2005? Yes, Your Honor. And the marriage was not in trouble at that time, correct? No, I will get to that point. I'm asking the court to reconsider her doctrine. Then, too, she mortgaged the properties to pay off her credit card debts, of which $23,000 was not incurred during the marriage. And she paid off $23,000 with that loan. We're claiming that's, well, if it's not dissipation, and I'm well aware of the law, that you must have a marriage in trouble to award dissipation. But the statute does say you can take into consideration the contributions of the husband and the wife as to acquisition of assets or dissipation of assets. And she spent $23,000 on her own credit cards. The husband contributed $16,000 towards the marriage. So what are we talking about? The wife earns $5,400 approximately a month as a civil engineer. He nets $1,600. He testified that he rehabilitated these properties, that he stayed home and babysat the children, and then worked on rehabilitation of the properties until he had to do his cleaning service, which started at 11, 1130. And he pays $375 a month's support. Yes, Your Honor. And she pays, I don't know if she or who, pays $250 a week for daycare. Who pays that? She paid that, Justice, but he was home babysitting. Who's she paying the $250 to then? We didn't see any records yet. Well, after the divorce, I mean, she's paying the child support after they separated. Oh, yes, yes. I mean, not child support, she's paying the daycare expense. Yeah, absolutely. He's not babysitting the children. No, he's not, Justice. What it gets down to in looking at this is she comes out with everything, and maybe the debt's exploded a little high, and he comes out with a Mercedes, of which he has to pay her the worth of by a monthly payment of $200 a month to equalize. But he's not paying hardly anything for child support. He's paying a statutory amount, Your Honor. He's making at the time $1,600, and he's paying a statutory amount for two children. And, of course, visiting the children. There's no issue with that. To give her all the properties, and even though we have the computation of debt, he comes out with absolutely nothing, and she takes all the properties. And she also, by the way, he didn't mention that he has to consider the non-marital property of the house in the division. We're not saying these people have a lot of money. We're not saying that he should get all equity in these properties. But what he wants is, okay, sell the properties at public auction, and split, and split. What was the value of the non-marital house? I don't think we ever evaluated it. So how's he supposed to consider that? Well, he didn't. And I may have been remiss, although it was probably plaintiff's counsel's duty to submit to the court. She didn't submit the pension plan development, so the court ordered that to be done upon request of counsel. I know I'm not talking about the most momentous case. I'm only talking about an issue of fairness, that he should get something out of this marriage. And the only way we're going to be able to do that is to send it back, sell the rental properties, split the property. But then she'd have all the other debt, too, right? Well, you take out the mortgage debts. Right. And, Your Honor, Justice, you have to remember that she is the one, when they bought these properties, they were debt-free. And he's found them, and he was rehabilitating them, and she took out the mortgages. They weren't habitable when they bought them, were they? No, but that's why he was working on them. And he testified that he had certain friends. Now, I understand the credibility is determined by Judge Nardulli. He testified he had friends available, and were working on the properties with him, and he did work on the properties. Contrary to that, the wife presented evidence that her parents had visited the scene, rehabilitation houses, and never saw the husband there, and also at work, and said that he hadn't shown up, but he was supposed to work with them for two weeks. That's the case. You wonder why you should take an appeal on such a small amount. It's the issue of, I guess, fundamental fairness. He came out with nothing. He made contributions, including money, and received nothing from Judge Nardulli. And we believe it's unfair. That's the sum and substance of the argument. Thank you. Any questions? No. Thank you. Mr. Smith? Thank you, Your Honor. To get something out of the marriage, you ought to put something into it. Based upon the record, and I wasn't the trial attorney, but you look at the record, the only thing Mr. Diabati testified about was, these are all the things that I did, but had no documentation to support. He had all these people that helped him and worked with him, and he paid them money. Where did this money come from that he paid these people? There was no record to indicate that he ever had any money. He was talking about scams and schemes with politicians and East African people, West African, and that, in fact, he didn't contribute anything to the marriage. Unfortunately, the marriage was upside down, which happens to a lot of people. We have more debt than we have assets. The court has to allocate those in some manner. How do you do that, to be fair to everyone? If you do, as Mr. Costello said, you sell these properties, and then they don't bring enough to satisfy that, who is the person that's going to wind up paying for that? Mrs. Diabati, because Mr. Diabati doesn't have anything, and if he ever did, we'll never find it. I think that, in fairness, the court had these valuations. No one's contesting the valuations that were there, or at least there's nothing in the record. Judge Narduli heard all the testimony about who did what, and had before him all the facts. He decided that this is the value of the estate. We've got to divide it some way, and he did it this way. Certainly, Mr. Diabati comes out, as Mr. Costello said, short because he has $9,000, but he has to pay $10,000. He doesn't take into account that Mrs. Diabati came out short in the fact that she has $21,000 in debt, and has an obligation from him, which she is going to have to make efforts to try to collect. If, in fact, she does collect it, then maybe she will be more equalized in terms of the debts and the assets. But based upon the record debts before the court, I don't think that's a likelihood. Court, is there any questions? No, thank you. Mr. Costello, rebuttal. Only, I did ask the court to re-examine the doctrine of dissipation. As the case law states now, there must be trouble in the marriage on its way out. How do you know, if you're the innocent spouse, that you're in trouble in the marriage, and that someone's doing something, secreting assets, presumably the husband, to make a new nest for himself? I think that we should examine the purposes of which money was spent to determine dissipation, regardless of whether or not we're going to lawyers or counselors or we're bickering and crying all the time. I think that you're always the last to know if your marriage is in trouble, if you're not the one. Well, your opponent said there weren't any evidence presented by you to amounts paid to his co-worker or himself. No, sir, he didn't have any. Pardon me? Well, how do we give that any credence at all? The judge and I really didn't, and I can't go into credibility at this point. All I can say is that there wasn't any evidence presented. But I would like to re-examine the doctrine of dissipation. Do you have any case law? I've cited a case law that says you must have a marriage in trouble. Right. I'm asking you to... Did I dissent in a case on that issue? A long time ago, Your Honor. Yes, but it's a dissent. Okay. You may make new law, that's what I'm asking. All right, thank you, Mr. Castello. Thank you. We'll take this matter under advisement and recess until the next case.